UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JANE DOE,

                              Plaintiff,

          -against-                              Civil Action No. 5:21-cv-54 (MAD/ML)

SYRACUSE UNIVERSITY,

                              Defendant.
-----------------------------------------------------------X

## **COMPLAINT**

E. STEWART JONES HACKER MURPHY LLP

JULIE A. NOCIOLO, ESQ.
Bar Roll No. 519914
*Attorney for Plaintiff Jane Doe*
28 Second Street
Troy, NY 12180-3986
Tel. (518) 274-5820

Plaintiff JANE DOE, by and through her attorneys, E. STEWART JONES HACKER MURPHY LLP, complaining of defendant, SYRACUSE UNIVERSITY, alleges as follows:

## THE NATURE OF THIS ACTION AND FACTS OF THE CASE

1. Plaintiff seeks redress against Defendant Syracuse University (hereinafter "the University") due to the actions, omissions, errors, and the flawed procedures and/or negligence and overall failure to provide plaintiff with the standard of procedural process to which she was entitled arising from the allegations of academic dishonesty against plaintiff, a student at the University in good standing with an otherwise unblemished record.

## THE PARTIES

### I. The Plaintiff

2. Plaintiff Jane Doe is a natural person residing in the State of Virginia. During the events described herein, and presently, she is enrolled as a student at Syracuse University.

3. Plaintiff was accepted to many universities across the country, including defendant Syracuse University.

4. Plaintiff ultimately chose to attend Syracuse University and began there in the fall semester of 2019. Her chosen major is Environmental Engineering. This major brings with it potential for plaintiff's future job prospects in the STEM field.

5. Plaintiff's anticipated graduation is in the Spring of 2023.

6. Prior to this incident, plaintiff has never been charged or disciplined by Syracuse University.

### II. The Defendant

7. Syracuse University is a private university located in Syracuse, New York.

8. The University advertises itself as having "the capacity to attract and engage the best scholars from around the world, yet small enough to support a personalized and academically rigorous student experience."

9. The University promotes itself as a Research 1 institution that was awarded a total of $87 million dollars in 2019 for research, teaching, and other sponsored programs. In addition, the University's campus is home to over thirty research centers and institutes. Overall, the University is ranked #54 among the Best National Universities by U.S. News & World Reports.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332 because it arises between citizens of different states and the amount in controversy exceeds $75,000. The plaintiff is a citizen of and resides principally in the State of Virginia. The defendant, as an institution, is located in and is a subject of New York State.

11. This Court has personal jurisdiction over defendant University on the ground that the University is conducting business within the State of New York.

12. Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1931 because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of New York.

## JURY DEMAND

13. Plaintiff hereby demands a trial by jury of all triable issues in this matter.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

A. **Defendant Syracuse University's Academic Integrity Policy**

14. The University has an Academic Integrity Policy (hereinafter "the Policy"). (Attached hereto as Exhibit "A" and incorporated in this Complaint).

15. The operative Policy is effective July 1, 2017. However, it was updated on July 17, 2020 to "incorporate[] technical changes." (See Exhibit "A" at Cover Page.) Among the technical changes, the University included the name of the Center for Learning and Student Success (CLASS) which is the department charged with the duty to facilitate the adjudication of student academic integrity complaints.

16. In its General Policy Statement, the University affirms that:

> [t]he Academic Integrity Policy is designed to make integrity and honesty central to the Syracuse University experience by: setting forth clear expectations for students in their academic endeavors; promoting consistency of standards and practices across colleges, schools and programs; encouraging reporting of suspected violations; and facilitating the resolution of cases as promptly as possible while providing thorough and fair consideration for students and instructors.

(See Exhibit "A" at 2).

17. The University explains that:

> [t]his policy is designed to cultivate an academic environment of honesty and integrity by ensuring that students adhere to certain ethical standards in their academic work. This policy addresses academic integrity standards that apply to students, and it governs the ways in which faculty, instructors and administrators must handle suspected violations.

(See id.).

18. The Policy provides that:

> [a]ll students have the right to have their case considered by impartial members of an academic integrity panel and may not be penalized for a suspected violation by an instructor, School, or College until a final case decision is issued according to the procedures described below.

(See id. at 7).

19. The Policy describes different "avenues for case resolution" for reported academic integrity violations. (See id. at 8-10). Among them is the right to a hearing. (See id. at 10).

20. The Policy dictates that a hearing "allows resolution of complex cases, those in which key facts remain in dispute following case intake, and those involving the most serious suspected violations of academic integrity." (See id. at 9). Additionally, the Policy explains that "[h]earings *will be* held . . . [when] [t]he student disagrees with the finding by the School or College Academic Integrity Coordinator and faculty panel member that her or his actions constituted a violation of the policy." (See id. at 10 [emphasis added]).

21. The Policy sets forth the requirements for a case that is resolved by a hearing. (See id. at 9-10). The Policy requires a five-member hearing panel made up of two faculty members, two student members, and one administrator member.

22. The University also has an Academic Integrity Hearing Guide (hereinafter "the Guide"), which governs the hearing process in academic integrity cases. (Attached hereto as Exhibit "B" and incorporated in the Complaint).

23. The Guide "is based on requirements specified in Syracuse University's Academic Integrity Policy and draws upon prior versions of the hearing guide as well as on Syracuse University's Student Conduct System Handbook." (See Exhibit "B" at 2).

24. Following a hearing and an adverse decision, a student has the right to appeal on two grounds: (1) emergence of new, previously unavailable evidence, or (2) failure to follow required procedure.

25. After the University makes a final decision on the appeal a student has exhausted the University's administrative process.

**B.     The University's Modification to its Academic Integrity Procedures Due to COVID-19**

26.     On the first page of the Policy, the University included a provision entitled "Adoption of Emergency Procedures." (See Exhibit "A" at 1).

27.     Underneath the emergency heading, the Policy provides:

> [d]ue to the ongoing COVID-19 pandemic and related increases in remote work and online education, the University may modify the academic integrity procedures described below in this Academic Integrity Policy so that the suspected violations can be resolved as fairly and expeditiously as possible based on the unique characteristics of each case. Regardless of any procedural modifications, which will be communicated to students in writing, students will continue to receive notice of their suspected violations, to have an opportunity to give their account of the case, and to have the option to contest the case outcome on appeal. The specific processes used to evaluate each case will depend on the characteristics of that case. These changes have been approved by the Vice Chancellor and Provost, as required on page 2 of this Academic Integrity Policy.

(See Exhibit "A" at 1).

28.     Similarly, in the Guide under the heading "Modifications to Hearing Procedures," the University provides the following modification due to the pandemic:

> due to ongoing COVID-19 pandemic and related increases in remote work and online education, Syracuse University has adopted emergency academic integrity procedures so that suspected violations can be resolved as fairly and expeditiously as possible based on the unique characteristics of each case. As stated in the emergency provision appearing on p. 1 of the Policy, the specific processes used to evaluate each case will depend on the characteristics of the case.

(See Exhibit "B" at 2).

### C.  Defendant's Adjudication of the Academic Dishonesty Allegations Against Plaintiff

29. On July 3, 2020, the University through CLASS notified plaintiff that Professor Walter Freeman, her Physics 211 professor, lodged a complaint accusing her of a Policy violation alleging that plaintiff cheated on her final exam in his course. (Attached hereto as Exhibit "C" and incorporated to the Complaint).

30. The charge letter notified plaintiff that a hold had been placed on her student account preventing her from taking a leave of absence or withdrawing from the physics course pending the University's determination.

31. Attached to the charge letter was a case report authored by Professor Freeman detailing his allegations. (See Exhibit "C").

32. In sum and substance, Professor Freeman accused plaintiff of using an unauthorized source to answer the exam questions. Professor Freeman alleged that plaintiff used the website Chegg[1] to assist her on the final exam; the website was later found to contain potential answers to the exam. Professor Freeman accused plaintiff of copying one of the wrong answers from Chegg and representing it as her own.

33. Plaintiff responded to the charge pursuant to the University's Policy and denied the allegations. (Attached hereto as Exhibit "D" and incorporated to the Complaint).

34. Thereafter, plaintiff was notified that the University would not hold a hearing pursuant to the emergency procedures in the Policy.

35. Rather, the University informed the plaintiff that her case would be resolved by a different University professor who would serve as both the investigator and adjudicator.

---

[1] Chegg is a website with the goal "to improve the overall return on investment in education by helping students learn more in less time and at a lower cost." See "Our Vision," Chegg, available at www.chegg.com/about (last visited Jan. 13, 2021).

36. Plaintiff retained an advisor, and objected to the University's adjudication without a hearing as required by the its own Policy and Guide. (Attached hereto as Exhibit "E" and incorporated to the Complaint).

37. The University, through CLASS, dismissed plaintiff's objection and affirmed its decision to resolve her case without a hearing.

38. Plaintiff then submitted to a faculty interview with Professor John Tillotson, the University professor named to investigate and adjudicate her matter. Professor Tillotson also determined the sanctions in plaintiff's case.

39. On or about August 24, 2020, Professor Tillotson submitted his report finding plaintiff in violation of the University's Policy. Professor Tillotson's determination was upheld by Gerald R. Greenberg of CLASS. (Attached hereto as Exhibit "G").

40. As a result of the finding, the University sanctioned plaintiff to, among other things, a six-month probationary period, a notation on her transcript indicating the violation, and a grade violation of an "F" in her physics course.

41. On or about September 3, 2020, plaintiff timely appealed the University's adverse determination. (Attached hereto as Exhibit "H").

42. In response to plaintiff's appeal, the University affirmed its underlying decision finding plaintiff in violation of its Policy and upheld the sanction determination. (Attached hereto as Exhibit "I").

### AS AND FOR A FIRST CAUSE OF ACTION
### Breach of Contract under New York State law

43. The plaintiff restates, realleges and incorporates by reference all of the preceding allegations of this Complaint as though fully set forth in this paragraph.

44. A binding contract exists between the plaintiff and Syracuse University, regarding Syracuse University's provision of education to the plaintiff, and the terms and conditions on which the education is provided.

45. Syracuse University extended an offer to provide an education to the plaintiff subject to certain terms and conditions, in exchange for the plaintiff's selection of Syracuse University as her institute of higher education (as opposed to selecting another college) and in exchange for the plaintiff's payment of tuition for that education. The plaintiff accepted that offer by enrolling at Syracuse University (to the exclusion of other colleges), studying there for the past year, and paying the agreed-upon tuition dollars.

46. The various terms of the Policy (Exhibit "A") constitute material terms of the parties' contract.

47. Syracuse University has breached the material terms of the contract by denying plaintiff a hearing to determine whether she was in violation of defendant's Policy.

48. First, Syracuse University failed to follow its own procedures and hold a hearing to adjudicate the allegations of academic dishonesty against plaintiff. The Policy provides that it will hold a hearing with a five-member panel made up of students, faculty, and an administrator when, as relevant here, "key facts remain in dispute following case intake" or "[t]he student disagrees with the finding by the School or College Academic Integrity Coordinator and faculty panel member that her . . . actions constituted a violation of the policy." (See Exhibit "A" at 9-10).

49. Second, upon information and belief, other students in Professor Freeman's course were not penalized for same or substantially similar conduct on their final exam. The defendant's unequal application of Policy violates the principles of its own Policy and such action is arbitrary and capricious.

50. The plaintiff has no adequate remedy at law, and the harm inflicted by the finding of fault and attendant sanctions is irreparable.

51. Accordingly, the plaintiff is entitled to a judgment compelling Syracuse University to specifically perform its obligations under the contract including, without limitation, its obligation to provide plaintiff with a full and fair hearing to adjudicate the allegations of academic dishonesty lodged against her. Syracuse University must be compelled by judgment to lift the finding of fault and attendant sanctions against plaintiff arising from a procedurally defective process.

## AS AND FOR A SECOND CAUSE OF ACTION
### Breach of Contract – Money Damages

52. Plaintiff repeats and realleges each and every allegation above as if it is fully set forth herein.

53. The defendant's foregoing breaches of its contract with plaintiff have injured and continue to damage the plaintiff.

54. As a result of said breaches, the plaintiff has and will continue to lose opportunities in obtaining pipeline internship opportunities that would lead to permanent employment in her chosen career path of engineering.

55. Accordingly, the plaintiff is entitled to a money judgment against the defendant an amount to be determined at trial, but in no event less than $75,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing

56. Plaintiff repeats and realleges each and every allegation above as if set forth fully herein.

57. The law implies a covenant of good faith and fair dealing in the contract between the parties.

58. The covenant of good faith and fair dealing prohibits a party from doing a thing (or neglecting to do a thing) that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

59. The defendant's summary adjudication and sanction of the plaintiff deprives her of the fruits of the contract for which she bargained.

60. For that separate and distinct reason, the plaintiff is entitled to a judgment of specific performance compelling the defendant to lift the finding of fault and sanction, and/or an award of money damages as alleged above.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons plaintiff demands judgment against defendant as follows:

A. A judgment of specific performance against the defendant, compelling the defendant to rescind its finding of fault and attendant sanctions arising from the procedurally defective process determining that plaintiff violated defendant's Academic Integrity Policy;

B. Money damages in an amount to be determined at trial, but in no event less than $75,000;

C. The costs of the action, prejudgment interest, and such additional and further relief in favor of the plaintiff as this Court may deem just and proper.

D. Award plaintiff such additional and further relief as this Court may deem just and proper.

Dated:      January 15, 2021

                               **E. STEWART JONES HACKER MURPHY LLP**

                               By: _____
                                     Julie A. Nociolo, Esq.
                                     Bar Roll No. 519914
                                     28 Second Street
                                     Troy, New York 12180
                                     518-274-5820
                                     jnociolo@joneshacker.com